# Rudy *versus* The Commonwealth.

A sheriff having two executions in his hands, sold the defendant's personal property for a sum that was insufficient to satisfy the first writ, and made a levy on the defendant's real estate for the balance; subsequently, the defendant gave to the sheriff a sum of money, with directions to pay it to the creditor in the junior execution : *Held*, that, under the circumstances, the sheriff could not make a levy on the money so paid to him, under the first execution ; and that he was justified in returning that it was made on the second writ, and paying it to the plaintiffs therein.

A sheriff having levied on the defendant's real estate, cannot, whilst that levy remains undisposed of, seize in execution under the same writ, a sum of money belonging to the defendant, which is voluntarily paid to him, for another creditor.

*It seems*, that a sheriff having two executions against the same defendant, may receive from him a sum of money, to be paid to the holder of the junior execution ; and that he is not bound to levy on such money, in his own hands, by virtue of the first writ.

Error to the Common Pleas of *Montgomery county.*

This was an action of debt by The Commonwealth of Pennsylvania, for the use of John B. Stevenson, against Samuel D. Rudy, sheriff of Montgomery county, upon the defendant's official bond.

[Rudy v. The Commonwealth.]

On the 27th April 1857, G. R. Fox, Esq., as attorney for John B. Stevenson, issued an execution against Peter Koffel, on a judgment for $1101.22, and placed it in the sheriff's hands for execution.

On the 2d May 1857, Mr. Fox, as attorney for Brock, Emery & Co., issued another execution against Koffel, on a judgment for $259.13, which had been confessed by the defendant, with a stay of execution until the 1st May.

On the 27th May, the sheriff sold the personal property of Koffel, for a sum that was insufficient to satisfy the execution in favour of Stevenson, and made a levy on the defendant's real estate.

Some time after these executions came into the hands of the sheriff, Peter Koffel, the defendant therein, in pursuance of a previous arrangement, gave to the sheriff the sum of $240, with directions to carry it to Mr. Fox, as attorney for Brock, Emery & Co., and to pay it to him on account of their judgment.

On the 30th May 1857, Mr. Fox, as attorney for John B. Stevenson, gave the sheriff a receipt for $550 in full of the amount made on the sale of Koffel's personal property; and on the same day, he receipted for $220.23 on account of the execution in favour of Brock, Emery & Co.

On the latter writ, the following return was endorsed, but not signed by the sheriff:—

"Sheriff for $220.23, of principal and costs.

So answers ——— <em>Sheriff.</em>"

On the trial, the defendant excepted to the admission in evidence of this alleged return; and also to the admission of G. R. Fox, as a witness for the plaintiff.

The court below (SMYSER, P. J.) instructed the jury as follows:—

"The first question that presents itself is, whether the words endorsed on the Brock, Emery & Co.'s execution, are the sheriff's return to the writ. This involves matter of inquiry for you, as well as of determination for the court. The matter for your inquiry is, whether the words I have quoted, were placed on the writ by the sheriff, or by his authority, direction, knowledge, or consent? On this subject, you are referred to the testimony of the deputy-sheriff, John F. Hartranft, when called by plaintiff, and to what he says at the close of his cross-examination, when called by the defendant; to that of Jared Evans, the deputy prothonotary; and the entries on the execution-docket; and perhaps, the testimony of Mr. Fox, as to what transpired when the receipts were given, may throw some explanatory light on the subject also.

"If you are satisfied that the words in question were placed on the back of the Brock, Emery & Co.'s <em>fi. fa.</em> as a return, or intended as such, and that the writ was afterwards taken into the prothonotary's office by the sheriff, or his deputy, by his authority,

[Rudy *v*. The Commonwealth.]

in the customary manner of returning writs of a like kind, then, we instruct you that it is the sheriff's return in law, notwithstanding the omission of his name thereto. It is true, that by a literal adherence to the terms of the statute of 12 Edward II., chap. 5, (commonly called the statute of York, and reported by the judges to be in force in this state,) the law might seem to be otherwise; and what is said in *Dalton* 536, would also accord with that view. But I think the cases in 1 *Leon*. 139; Dalston *v*. Thorp, *Cro. Eliz*. 767, and our own cases of Dewar *v*. Spence, 2 *Wh*. 220, and Beale *v*. The Commonwealth, 7 *Watts* 186, together with the cases of Adams *v*. Robinson, 1 *Pick*. 461, and Commonwealth *v*. Parker, 2 *Pick*. 550, in the state of New York, are sufficient to sustain the views of the law I have just given you.

"If, then, this should be in this manner ascertained to be the sheriff's return, he would, in this case, be concluded by it, unless relieved from its conclusive effect by showing fraud, accident, mistake, or misrepresentation leading him, and inducing him to make the return as he did. If not relieved from the effect which the law ascribes to his return, on some of these grounds, the plaintiff would be entitled to your verdict assessing the damages at the amount appropriated by the sheriff to the second execution, the one in favour of Brock, Emery & Co., because Stevenson's being prior in point of time, and the balance of it remaining unpaid after the appropriation made to it by the officer of the $598, and this unsatisfied balance greatly exceeding the amount now in dispute; it was a misappropriation and mispayment on the part of the sheriff to pay any part of the moneys made on the executions, to the second, until the first was satisfied. This rule, however, is subject to a very important qualification, to which I ask your particular attention. It is alleged by defendant that the money paid to the Brock, Emery & Co.'s claim, was received by him in two payments, of $50 and $190, before either of the executions came to his hands; that he did not receive it in his official capacity as sheriff, but as the mere agent of transmission, for the mutual accommodation of the parties; and that, the money having remained in his hands, instead of being handed over to Mr. Fox, the attorney of Brock, Emery & Co., until he came to settle with him for moneys made on the Stevenson execution, the money in dispute was apparently paid on Brock, Emery & Co.'s *fi. fa.*, and receipted for accordingly, without any view to its legal effect, and solely to enable the sheriff to get his costs on that execution also. If you find this to be so, from the evidence in the case, then we tell you that, notwithstanding the return and the conclusive effect which the law attributes to it, the plaintiff here would not be entitled to recover, but your verdict ought to be for the defendant; and you will readily perceive the reason of

[Rudy v. The Commonwealth.]

this. Besides the other considerations rendering it inequitable to hold the sheriff liable under such circumstances, there would be, under the facts supposed, a violent implication of the assent of the present plaintiff, by his attorney, to the arrangement; and Mr. Stevenson would be bound by what his attorney did.

"Again, it was competent for Mr. Stevenson, by his attorney, to waive his legal rights, and assent to the appropriation actually made; and such assent after payment, would be irrevocable. Of such assent, the receipts given by Mr. Fox, who represented both claims, would, unexplained, be very strong evidence; and, in my opinion, conclusive. He could not, representing the one claim, request or induce the sheriff, as his agent, to receive moneys from Koffel, from time to time, in partial payments, neglect or refuse to receive them from Mr. Rudy, until he should have received the whole, then place an execution in his hands in favour of another party, settle with and receipt to the sheriff for the actual proceeds of the personal property levied and sold thereon, giving at the same time a distinct and explicit receipt for the moneys received on the first-named ·claim, and then turn around and on behalf of his present client, repudiate this whole arrangement, and, on the legal conclusiveness of the return which he would thus have, intentionally or unintentionally, beguiled the sheriff into making, compel him, by your verdict, to pay this money over again. Such conduct would, on the ground either of fraud or mistake, relieve the sheriff from the effect of his return, and put the case before the jury on its real merits, untrammelled by any legal rule.

"Such seems to have been the plaintiff's own view; for when the testimony had reached this stage of development, Mr. Fox, who had till then conducted the trial of the case for the plaintiff, retired from the case, and was offered as a witness, to explain the transaction, especially in relation to the receipts. We did not, and do not, feel called upon to express our opinion in regard to the taste or propriety of this course on his part. We sit here to decide questions of law, not of taste; and considering him legally entitled to testify, we admitted him as a witness. His testimony is before you, under all the circumstances under which it is given, and of which you will judge for yourselves. It will be for you to determine, from it and all the evidence in the cause bearing on the legal question, whether Mr. Fox was induced to give the receipts, and do what he did, as the representative of Mr. Stevenson, under the belief, produced in his mind by the representations of the sheriff, or of others in his presence, that the $240 received by him from Koffel, or any part of it, was received by him before he had the Stevenson execution in his hands. If Mr. Rudy did make such representations, and they were contrary to the fact, then Mr. Stevenson ought not to be affected by what his attorney

[Rudy *v.* The Commonwealth.]

did, under their influence.   To hold otherwise, would be to per-
mit the sheriff to take advantage of his own wrong; nor will it
make any difference that those misrepresentations were made
under an honest mistake, without any design to mislead, because
their effect would still be to deceive.   If the $240 paid by Koffel
to the sheriff, or any part of it, was received after the Stevenson
execution was put in his hands, then so much of it as was so
received, would belong to Mr. Stevenson, even if Mr. Koffel gave
it to Mr. Rudy, with specific directions to pay it to the other
claim; unless, indeed, such arrangement were previously, or at
the time authorized, or subsequently ratified, by Stevenson or his
attorney.   The reason is, that so long as the money remained
*in transitu*, and until actual payment to Brock, Emery & Co.,
or their attorney, the money remained the money of Koffel, liable
to be reclaimed by him, or subject to his order, so far as the
matter lay between him, the sheriff, and Brock, Emery & Co.
Even if this is not so, still the claim of the latter upon the sheriff,
under the arrangement under consideration, would only be for an
equivalent sum of money, not for the specific notes, coins, &c., in
which it was paid to the sheriff by Koffel.   The lien of Steven-
son's execution would close on the money, the very instant it
reached the sheriff's hands; because, although the sheriff may,
and is required to levy on the money of the defendant in an
execution, when he finds it elsewhere, or in the hands of another
person, he is not required to levy on it in his own.   Indeed, an
actual levy does not seem to be required in any case.   The
language of the execution act (Act 16th June 1836, § 24, *P. L.*
765) is, 'It shall be lawful for the officer charged with the execu-
tion of any writ of *fieri facias*, when he can find no other real
or personal estate of the defendant, to *seize and take*' (not levy)
'the amount to be levied upon such writ, of any current gold,
silver, or copper coin belonging to the defendant, in satisfaction
thereof; or he may take the amount aforesaid of any bank notes
or current bills,' &c.

   "If, then, the lien of the Stevenson execution attached itself
to and fastened on Koffel's money the moment it reached the
sheriff's hands, that was equivalent to a 'seizing and taking' by
the sheriff; and it is clear, that the title of Brock, Emery & Co.
could not lay hold of it any sooner, granting that it vested at all
to the specific article before actual transmission and delivery.   If
they vested *eodem instanti*, then it is reasonable that the law, in
the absence of other ground of discrimination, should give the
preference to its own process; and that would let in the claim of
Stevenson before that of the other claimants.

   "I believe this covers every possible view of this case; and
we commit it now to the jury, to render such verdict as the law

[Rudy v. The Commonwealth.]

as we have stated it, and the evidence as you shall find it, will warrant and require at your hands."

To this instruction the defendant excepted; and a verdict and judgment having been rendered in favour of Stevenson, the equitable plaintiff, for $220.23, the defendant removed the cause to this court, and here assigned for error: 1. The admission in evidence of the alleged return to the execution of Brock, Emery & Co. 2. The admission of G. R. Fox, as a witness for the plaintiff. 3. The charge of the court to the jury.

*Boyd* and *Chain*, for the plaintiff in error.—The defendant in the execution had a right to make a voluntary payment to the sheriff, and to designate the creditor to whom it should be paid: Selfridge v. Northampton Bank, 8 *W. & S.* 325; United States Bank v. Macalester, 9 *Barr* 475; Moorehead v. West Branch Bank, 3 *W. & S.* 550; 5 *Id.* 542. Besides, the sheriff can only levy on money when he can find no other real or personal estate of the defendant: Act 16th June 1836, §§ 24–5, *Brightly's Purd.* 331. And in this case he had made a levy on real estate.

*Mulvany*, for the defendant in error.—This is not a question of appropriation. If the money paid to the sheriff was, at and immediately after its delivery, the property of the defendant, the sheriff was bound to apply it to the first execution: Brind v. Hampshire, 1 *M. & W.* 365; Finney v. Finney, 4 *Harris* 380; Blabon v. Lewis, 16 *Leg. Int.* 300; Fitch's Appeal, 10 *Barr* 461; Herron's Appeal, 5 *Casey* 240.

The opinion of the court was delivered by

WOODWARD, J.—The $240 could not have come to the sheriff's hands before he received the Stevenson execution, because that question, fairly submitted to the jury, was found for the plaintiff. Under the instructions of the judge, which are contained in the 3d, 4th, and 5th assignments of error, the question is, then, whether all that occurred amounted to a "seizing and taking" of that sum in execution by the sheriff. If it did, he made a false return of Stevenson's *fi. fa.*, for he should have applied the money to that writ. There can be no doubt that when a sheriff has two executions in his hands against the same defendant, at the same time, he is bound to apply any levy he makes, whether of goods or money, to that writ which first came into his hands, giving the second the benefit of any surplus that may remain after satisfaction of the first. But can money, voluntarily paid to a sheriff with directions to hand it over to a specified creditor, be said to have been seized and taken in execution by the sheriff? If in any case it can be, the question that arises here is, whether it can be considered a seizure upon an execution that shows a levy and sale of personal

[Rudy *v.* The Commonwealth.]

property, and a levy undisposed of on real estate ? The Act of 16th June 1836 gives the sheriff authority to seize and take money in execution only " when he can find no other real or personal estate of the defendant," and even then, he is not to take the money from the person of the defendant.

Now the sheriff having, on the 27th May, sold the defendant's goods to an amount greatly less than the Stevenson execution, there was nothing in the fact of that levy to prevent his seizure, three days afterwards, of money on the same execution ; but the levy on real estate, not having been disposed of, would seem to present an insuperable obstacle to his seizure of money on the 30th of May. If the Act of Assembly means what it says, he was in no condition to seize coin, for he had taken land, and it could not appear, except by a sale, that the levy was insufficient to satisfy the debt. Is he to be held liable for a false return because he did not do that which the statute forbade ? He made no false return of the plaintiff's writ, if he did not, and could not levy that writ on the money in question ; and that he could not is as certain as that he could not set aside the Act of Assembly.

Independently of this view of the case, we should have difficulty in considering it a seizure and levy at all, if the sheriff had not concluded himself on that point by his return of the writ of Brock, Emery & Co. If Koffel, the debtor, gave the sheriff the money to carry to the attorney of his creditor, it was a trust, which the sheriff had better perhaps have declined, but which, being undertaken, he was bound to execute. To seize and take is an aggressive act on the part of the officer—to receive by the voluntary payment of the debtor, and to carry the money to be deposited according to the debtor's directions, is altogether unlike the official act. Whilst the money remained in Koffel's hands, he had the sole control of it. The sheriff could not take it from his custody by virtue of his office. Koffel might apply it to whichever creditor he pleased. And if he sent it by the sheriff, as his messenger, to Brock Emery & Co., the sheriff, no more than any other messenger, could violate his trust to the prejudice of Koffel's right of application. But the sheriff has precluded himself from standing on this ground, by returning the money as made on Brock's execution. That return, though unsigned, was properly admitted in evidence, and, under all the circumstances in proof, we think the sheriff was properly held responsible for it. But what did it prove ? Only that he had applied the money to the later writ instead of the earlier. But if the Act of Assembly forbade him, in the circumstances of the case, to apply it to the earlier writ, then the plaintiff in that writ has no reason to complain. So is the act written that it would have been a breach of official duty, as well as of private trust, to apply that money to the plaintiff's writ, though it was first in the sheriff's hands. He

[Rudy v. The Commonwealth.]

ought not, therefore, to have been held responsible to the plaintiff. There was no error in holding Mr. Fox a competent witness.

The judgment is reversed, and a *venire facias de novo* is awarded.